First case on this afternoon's docket is the case of Norman Volpert v. Ill. Dept. of Employment Security Director, Ill. Dept. of Employment Security and the Board of Review and Hydro Services v. And we have Elaine Whiter Harshman for the appellant and we have Mr. Brad Pelle for the appellate Good afternoon, Your Honors. May it please the Court. My name is Elaine Whiter Harshman. I represent the appellants in this case, the Illinois Department of Employment Security, its Board of Review, and its Director. Together, the cases of Hawkins and Horton, along with the Department's own rules, set forth a very straightforward test that the Board uses to determine whether a claimant such as Mr. Volpert is disqualified for benefits under Section 601A of the Act, which concerns voluntary leaving. The test is this. When an employee has control over maintaining or obtaining a professional license, if that employee is discharged because he's failed to maintain that license and that was within his control, the separation will be deemed a voluntary leaving and without good cause attributable to the employer, he will be disqualified from receiving benefits. Under this test, the Board's decision was not clearly erroneous in this case, based on the evidence in the record. This Court, therefore, should reverse the decision of the Circuit Court and uphold the decision of the Board of Review. Turning first to Hawkins, Hawkins, in 1994, first set forth this test. In that case, the claimant was a driver who had two years to obtain a CDL, a commercial driver's license, consistent with new federal requirements. So he knew he had two years to take the test. However, he waited until less than two weeks before the deadline to attempt to take the test the first time. He failed, his employer wouldn't give him any additional time off to take it again, and he was discharged. He eventually passed the test after taking it three times after the deadline. In that case, the Court determined that Hawkins had been discharged due to his own inaction and that he was not eligible for benefits under Section 601A of the Act. The Court further extended this test in 2002 in Horton v. Department of Employment Security. In that case, the driver failed to maintain his driver's license, which had been suspended for a series of traffic violations. In that case as well, the Court found that he constructively quit his job by failing to maintain that professionally required license. As recently then as June 16, 2010, the Department codified this requirement at Rule 2840.101A, which is in the section which governs general principles for interpreting Section 601A of the Act. It set forth a test called the tools of the trade test and stated that where someone does not maintain a tool of the trade, in quotes, such as a professional license, whether it's required by the state or by federal law or is otherwise required, and if that is within their control, any separation resulting from a failure to maintain that license will be deemed a voluntary leaving. So applying this test to Mr. Volpert's case, it's clear that the Board did not care in holding Volpert to be disqualified from receiving unemployment benefits. Like Hawkins, his failure to maintain his certification was due to his own inaction. First, this was clearly a requirement of his job. He was informed of this when he was hired, as he stated on his application for benefits. And his employer also testified that this was required both by the state of Missouri and by its contracts with its customers. And he maintained his wastewater plant operator certification in order to work on his plans in the state of Missouri. But he failed to do so. Second, this was a matter within Volpert's control, so far as the record discloses. The licenses were issued in his name. We can see the certifications in the record. They make no reference to the employer. And he's also testified that the letters concerning the certifications were sent directly to him. Furthermore, he had recertified in the past. Over the course of his career, he had maintained his certification with help on as little as one occasion, as he stated in the record. Perhaps he had had help in getting recertified once, but clearly this was within his control. He was responsible for taking these exams himself, but he did not do it. So under the test as established in Hawkins and Horton and the department's own rules, it's clear that although it was within his control to maintain his license, he failed to do so. Therefore, his separation from his employment was a voluntary leaving without good cause attributable to the employer. Now, this is the better test. Fulpert has cited the case of Pearson from 1990, saying that if the employer was at least one cause of the employee's discharge, then it cannot be attributed to the employee and they would be eligible for benefits. The better test is the Hawkins, Horton, and department rule test. It's much more recent. It's much easier to follow. There's some problems with defining causation by Pearson that you have to import concepts from tort law, mostly able to do so. But even if this court does proceed under the proximate cause test as outlined in Pearson, the board's decision still is not clearly erroneous. A lot of these are matters of common sense. Proximate cause consists of both cause and fact and legal cause, which concerns foreseeability. In this case, you can see that we have neither. The record does not establish that Hydro Services knew that he wanted testing. So it's not foreseeable that if they did not offer testing, he would fail to renew his certification. After all, he had maintained his certification in the past on as little as one occasion. So there is no legal cause in the sense of proximate cause looking to tort law for these concepts. Neither is there cause and fact. Cause and fact must mean more than just a participation in the events that lead to a result. There must be, firstly, duty for a breach of that duty to have caused an injury. In this case, it has not been established that Hydro Services had any duty to help Mr. Volkberg take his tests. Indeed, he had to take them himself. He had to take the training. There was no allegation of any promise to help him do this. So first, there was no obligation. And therefore, the failure to offer help cannot be a but-for cause of the failure to recertify. Second, for there to be proximate cause where someone is relying on a voluntary undertaking, which this appears to be, there can be no cause and fact unless there is reasonable reliance on the performance of that voluntary undertaking. And again, it fails this test. Once the certifications expired in 2007, certainly it's not reasonable for Mr. Volkberg to continue to say he is relying on Hydro Services. Well, didn't he in this case, didn't he say he put an application or whatever it was on the desk of his employer for three years? We don't know exactly when he put that on there. What was the evidence? The evidence is Mr. Volkberg's testimony that he placed letters on Chad Woodisall's desk. That's it. Mr. Volkberg did not introduce any of these letters, did not state their contents, did not state what the date was. That is the extent of the evidence. Mr. Volkberg also declined to question Chad Woodisall about these letters or about anything else. So even if he did place those on the desk, still there couldn't be reasonable reliance. It would have been reasonable perhaps for Mr. Volkberg to pursue this more. But in the end, even if Hydro Services had refused, it still would have refused to help him. It still would have been Mr. Volkberg's responsibility to find out where the training and exams were by other means, whether it's calling the Department of Natural Resources, perhaps asking Chad Woodisall directly, how do I do this? So certainly, three years after these certifications expired, with doing no more than placing letters on the desk, Volkberg cannot claim to have reasonable reliance on Hydro Services to perform the service for him, scheduling the exam, telling him where to take it, telling him when to go. And it's important to note too that Larry Woodisall testified that the company had never refused anybody the time to take these examinations or refused to pay for them, so clearly there was more that Mr. Volkberg could have done. And this was not a reasonable effort based on the evidence in the record. So no duty, no reliance, and no foreseeability. There's neither cause in fact nor legal cause of Volkberg's failure to recertify. For that reason, even under approximate cause analysis, the board's decision was not clearly erroneous. I should say, lastly, that it's a little unclear in Pearson. Pearson can be harmonized with Horton and Hawkins in the department's rules by reading the requirement as an approximate cause requirement, but to the extent that you read Pearson to require only a cause, just a simple cause, that would not be sufficient under the Act to render someone eligible for benefits, just the employer's mere involvement at some stage of the proceedings that is less than approximate cause, because that would run contrary to the purposes of the Act, which is to provide benefits only for those employees who are unemployed through no fault of their own. So if there was a situation where the vast majority of the fault was the employee's and the employer had some minor involvement in the chain of causation, that still would not be enough to attribute leaving to the employer. Cause must mean something more. In this case, I think Pearson should be read to mean proximate cause, as it does use that term. If the Court has no further questions, we ask that the Court reverse the judgment of the Circuit Court and uphold the decision of the Board of Review. Thank you. You'll have the opportunity for rebuttal. Thank you. Mr. Pell. Good afternoon, Your Honors. My name is Brad Pell, and I represent the plaintiff in this case, Norman Volkert. May it please the Court. I don't want to go over my entire brief. I mainly will respond to the Board's arguments. First of all, you don't get to pick which test you want to apply, the tool within the tray within your control test or the proximate cause test. You have to look to the plain language of the statute, first and foremost. 601A states that ineligibility for benefits requires that the employee left work voluntarily without good cause attributable to the employing unit. That's what you have to follow, first and foremost, whether it's a tool-of-the-trade case or some other case. And as Pearson points out, and I believe other cases, when you follow the plain language of the statute, the salient question, and that's stated in the Jamie case, as I state in my brief, and that comes from Jamie, they state that also. The salient question under 601A is whether or not the employer was a cause in the termination, and Pearson explains that. Pearson makes clear that if the employer was just one cause, that's enough for 601A to not apply for the employee to be eligible for benefits. And you focus on the conduct of the employer, and the reason you do that is because that's what the plain language of the statute tells you to do. What did the training consist of? I'm not sure about that, Your Honor. I don't think the record tells us. Well, what I'm wondering is how much cooperation he needed, even if they weren't helping him. Would he have to schedule time off and that type of thing? I'm not really sure about that. It's my understanding that he would have been accommodated with going to the training whenever it was, whether it was at night or when it was. He could have gotten that scheduled. But when you look at the proximate cause analysis, the board wants us to engage in some kind of a negligence analysis or breach of duty analysis. I don't want to get into a Paul's graph type of argument here, but proximate cause exists separate from breach of duty or negligence. For instance, say you have a case where a Greyhound bus driver is driving down a highway and there's a huge tornado-like wind comes and blows the bus, causing him to jerk the wheel. He goes off the road and a bunch of passengers are injured. If the Greyhound bus company is sued, they would definitely be able to assert the defense that the sole proximate cause of the injury to the passengers was the wind. We can't say the wind is not the cause because the wind didn't breach a duty, the wind was negligent. Something can be the cause of something and not have been negligent or breached a duty. The Illinois Supreme Court dealt with that issue in the McDonnell v. McPartland case. That was a medical negligence case. The issue there was can a doctor be the sole proximate cause of an injury to a patient if the doctor wasn't medically negligent, if the doctor didn't breach the standard of care? Of course, the question is yes, and the court cited his approximate cause instruction. To prove cause, you don't have to necessarily prove a breach of a duty, and this isn't a negligence case. All of this conforms with the overall purpose of the Unemployment Insurance Act, which is to be liberally construed to allow benefits for an employee when his employment is terminated. For instance, in the misconduct analysis under 602A, making mistakes, doing your job the way your employer doesn't want to be done is not enough. You have to engage in willful and wanton misconduct. You have to breach the reasonable rule after you were warned. The same thing in the voluntary constructive quit issues like we have here. Generally speaking, an employee is entitled to benefits. We're all imperfect people. I think all of us, when we look back at our jobs, we can say to ourselves, well, I made a mistake there, or well, I wish I would have handled that situation differently. We're not talking about that. That isn't the issue, and maybe some of those mistakes we made in the past justified an employer to terminate our employment, but that's not what we're talking about here. We all know that under the Unemployment Insurance Act that there's a big difference between an employer justifiably terminating an employee's employment and the employer being ineligible for benefits. The board wants us to engage in this analysis of who should have done this, who should have done that. Mr. Volkberg should have done this and should have done that, and it was within his control. The tool of the trade, and he was wrong because he did this and didn't do that. That's not the analysis here. The analysis is simply, was the employer, Hydro Services, a cause in the termination? And if you look at the evidence in the record, I don't believe that any reasonable person can come to the conclusion that Hydro Services was not at least a cause. The evidence is undisputed that he laid the notices from the Department of Natural Resources on Chad Rudisell's desk. It hasn't been disputed. At the hearing, Chad Rudisell and Larry Rudisell were present. Twice they were asked, do you have anything more to add? Certainly if Mr. Volkberg never laid those notices on their desk, they would have spoke up and said, we never got those notices. He never did that. They didn't. It's undisputed he laid the notices on the desk. It's undisputed that Mr. Volkberg had asked Chad Rudisell for help in obtaining his certification on at least one occasion in the past. It is also undisputed that Mr. Volkberg, excuse me, that Chad Rudisell had assisted Mr. Volkberg with obtaining his certifications in the past. And perhaps most importantly, their hydro services and the board's argument is not that we didn't get the notice. He never gave it to us. We never knew about it. No. Their whole argument is, hey, we didn't have to do anything. He laid those on his desk, but we didn't have to do anything. If what a reasonable employer, if they wanted to keep employing him would have done would have been to say, Hey, Norman, we got these notices here. I saw you lay these on your desk. We want to tell you, we're not going to help you at all in this. You're going to have to completely on your own. That's your responsibility. He never did that. We don't know exactly what their morals were, but I think if you look at the listing of the evidence in the record that I have. At the end of my brief, I think a reasonable conclusion is that they wanted Mr. Volkberg employment to end. And that's why they never did anything when he laid the notices on the desk and why they never did anything to inform him that they weren't going to schedule the training. But regardless of what their motives may have been or whether it was just inaction, I don't think we can reasonably say that they weren't that hydro services when it wasn't at least a cause in this. So. If the court has any other questions. No, thank you for your argument. So my question is, there was no denial that those notices were laid on the desk. There was no denial, but nobody ever directly asked the question either. So the lack of a denial isn't very significant considering that Larry was evidence that they were put on the desk. Well, that's evidence, isn't it? First, I'd like to address the question of whether a cause is sufficient. It's not. Simple causation is not a required interpretation of the act for something to be attributable to the employer. In the sense of a simple, but for a cause, this really doesn't make a lot of sense. This would lead to absurd results. If any level of causation could render something attributable to the employer, because it would result in employees who are at fault gaining benefits under the act. But in any event, there is no, but for cause here in the sense that the lapses certification would not have occurred, but for hydro services failure to alert him to training, Mr. Volkert still would have had to follow through with the training, but have had to pass the tests. So you can't even say that there is a simple, but for cause here. How many years did, how frequently did he need to be certified? Under the certification scheme, as we know it, it's every three years. So the certificates in the record show that he was certified from 2004 through 2007. This also shows why this court should not follow the Pearson test. Mr. Volkert states that this court cannot pick and choose which test, but it can. The law has evolved since Pearson. No other cases concerning construct, but have followed Pearson's analysis in any way. Instead, Pearson was issued in 1990. In 1994, first district, same court came out with Hawkins and did not even mention Pearson, didn't follow it in any way. The same thing. It developed a separate test for these constructive quick cases, which had expanded in Horton and which the department codified, prompting a rule promulgated in June, on June 16th, 2010. So, so clearly the law has moved on from Pearson and with very good reason because Pearson doesn't provide the court with a whole lot of guidance about what level of causation would be required to attribute a leaving to the employer. It does use the term proximate cause, Mr. Wolpert argues that this is not a negligence case. Well, it borrows the language of negligence. So it, so it's, it's necessary to look to the, to the rest of the, the, the law concerning negligence. If you're going to even start discussing things in terms of proximate cause, Mr. Wolpert also makes the point that you don't have to have a breach of duty to have causation. That's true. And to say that someone's failure to do something, which is what they're alleging, they're essentially alleging a breach of, a breach of duty or failure to do something caused the injury, caused lack of certification. There has to be a, there has to be some obligation to perform a voluntary undertaking. The fact that someone could have intervened somewhere along the way and it might've come out differently, doesn't even establish a simple causation. So, so the negligence analysis is relevant if we're going to use the language of negligence. But, but as I stated, I think that the, the better test and the current test is set forth in Hawkins and important and the department's own rules. It doesn't mean that Pearson is necessarily wrong, but it's not a very useful test. It can be harmonized, but to the extent that it conflicts with the state of the law, now the court, the court should look past that or just, or disregard those portions because they have been superseded by more recent or thoroughly developed case law. Well, the final thing I'd like to say is that hydro services did say that it didn't know about the lapse in certification. Volcker would like to make this more a question about, well, could the employer have done something? And this is not, and that we shouldn't really look at whether it was his fault, but hydro services does say that it didn't know there hasn't been any finding to the contrary. I take it that there is certification was required for a condition of employment. Yes, Your Honor. And it had been required since he was hired in, in 1970. So when you say they didn't know, perhaps they had a duty to find out and be assured that he was certified. Well, perhaps they would have had a duty to their clients to make sure that he was certified, but they wouldn't have necessarily had a duty to Mr. Volcker. For example, a lawyer could not neglect to take his CLE courses, his continuing legal education courses, and then blame his firm for the lapse in his legal license. Even if the law firm had offered help in the past, such as offering in-house CLE or something like that, it still would be the lawyer's responsibility to maintain that license. Does the court have no further questions? Thank you. Thank you for your arguments. And we'll take a matter under advisement from the ruling.